(No. 11541.—Reversed and remanded.)

THE PEOPLE *ex rel.* The Cort Theater Company, Appellee, *vs.* WILLIAM H. THOMPSON, Mayor, *et al.* Appellants.

*Opinion filed February 20, 1918—Rehearing denied April 3, 1918.*

1. THEATERS—*theaters are subject to police regulation by cities.* Theaters are subject to police regulation, and the power to license and regulate them is conferred upon cities, subject to no other limitations than those imposed by the constitution upon the General Assembly.

2. SAME—*when ordinance may prohibit the receipt by theater managers of a higher price than advertised on tickets.* A scheme by which patrons of a theater, because of arrangements between the theater manager and ticket brokers or scalpers, are required to pay more than the advertised prices of admission, in which excess price the manager of the theater shares, is unfair and injurious to the public welfare, and an ordinance is not unconstitutional which prohibits such practice and requires the price of the tickets to be printed on the face thereof. (*People* v. *Steele,* 231 Ill. 340, and *City of Chicago* v. *Powers,* id. 560, distinguished and explained.)

3. SAME—*in what sense the theater business is private.* The business of the theater owner or manager is private in the sense that no franchise from the State is required, but it is no more private than the business of hawkers, peddlers, pawnbrokers, keepers of ordinaries, circuses, or other shows and amusements which invite the public generally to attend and which exist entirely by the patronage of the public.

4. SAME—*in what sense place of amusement is public.* A place of amusement to which the public are generally invited upon no condition but the payment of a fixed charge is public in a general sense and differs radically from accommodations offered by a merchant or professional man, who, while he invites everyone to enter, does so only for the purpose of selling to each individual services or merchandise.

5. POLICE POWER—*anything hurtful to the community may be prohibited under the police power.* The police power extends to the prohibition of anything which in the reasonable exercise of the legislative judgment can be regarded as hurtful to the community.

6. STARE DECISIS—*what a particular case decides is determined by the facts and question involved.* What is decided in a particular case is to be determined by the facts and the question involved.

DUNN, J., dissenting.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding.

SAMUEL A. ETTELSON, Corporation Counsel, (CHESTER E. CLEVELAND, and RALPH G. CRANDALL, of counsel,) for appellants.

MAYER, MEYER, AUSTRIAN & PLATT, (LEVY MAYER, and ALFRED S. AUSTRIAN, of counsel,) for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The Cort Theater Company on December 29, 1915, applied to William Hale Thompson, mayor of the city of Chicago, for a license to conduct a theater in the city and refused to comply with the provisions of an ordinance regulating the granting of such licenses, which prohibited secret alliances with ticket brokers or scalpers which had the effect of requiring some patrons of the theater to pay higher prices than others for the same accommodations, for the benefit of the licensee. The license was refused by the mayor, and the applicant filed its petition in the name of the People in the superior court of Cook county against the mayor and city clerk for a peremptory writ of *mandamus* commanding them to issue the license, charging that the condition in question was unlawful and void because in violation of sections 1, 2 and 14 of the bill of rights and section 22 of article 4 of the constitution of the State of Illinois and of the fourteenth amendment to the constitution of the United States.

The ordinance provides that every ticket of admission to a theater shall have printed upon its face the price thereof, and that no licensee, and no officer, manager or employee of any licensee, shall directly or indirectly receive any consideration, of any nature whatsoever, upon the sale of any such ticket beyond or in excess of the price designated there-

on, or directly or indirectly enter into any arrangement or agreement for the receipt of such consideration.

The defendants answered that there are in the city of Chicago a large number of places of amusement like that conducted by the relator; "that the relator and the great majority, if not all, of the proprietors of said places of amusement have entered into arrangements and agreements with sundry other persons by which the business of 'scalping,' so called, is carried on; that is to say, the relator and such other proprietors print tickets of admission to the performances given in their places of amusement on which are printed the prices of said tickets, and the prices of admission to said performance are duly advertised by the relator and such other proprietors in the public press and otherwise, but in truth and in fact the relator and such other proprietors have arrangements and agreements with sundry other persons, known as ticket brokers and scalpers, by which a large number of such tickets are placed in the hands of such ticket brokers or scalpers and are sold for prices in advance of the price printed thereon, and the excess above the price printed on the tickets is divided between the ticket brokers and scalpers and the proprietors, respectively, of said places of amusement, including the relator; that such ticket brokers or scalpers under such agreement or arrangement hold themselves out and are represented by the said proprietors of said places of amusement to be independent dealers and to be the owners of the tickets sold by them, but that in reality. such ticket brokers or scalpers are confederates with the proprietors of said places of amusement and sell such tickets at higher prices for the joint benefit of themselves and such proprietors; * * * that the uniform practice of the relator continuously, from a long time prior to the filing of the original petition to the present time, has been to represent to the applicants for tickets of admission sold at its box-office of said Cort Theater premises that its best seats have all been sold,

whereas the same have not been sold but were in the possession of ticket brokers or scalpers for sale at such higher price, for the joint account of such relator and such ticket brokers and scalpers."

The relator demurred generally and specially to the answer, and as to the portion above set out said that the facts stated "are wholly immaterial to any proper issue raised by said petition and the answer thereto and an attempt to raise issues wholly immaterial as a defense to the cause of action set out in said petition." The court sustained the demurrer, and the defendants electing to stand by their answer, the peremptory writ prayed for was awarded. The trial judge certified that the validity of a municipal ordinance was involved and the public interest required that an appeal therefrom should be taken to this court, which was accordingly done.

The question to be determined is whether, in granting a license to conduct a place of public amusement subject to regulation and the police power, a provision that the licensee shall not enter into an arrangement with ticket brokers or scalpers under which the licensee and the ticket brokers or scalpers both represent that the ticket brokers or scalpers are independent dealers and owners of tickets when in reality they are not owners but confederates, and the ticket brokers or scalpers sell the tickets at higher prices for the joint benefit of the licensee and themselves, and by means of falsehood and misrepresentation that all tickets to a performance have been sold a portion of the public are required to pay higher prices for the same accommodations than others, is an invasion of rights guaranteed by the State and Federal constitutions.

It was said in *Cecil* v. *Green,* 161 Ill. 265, that theaters have from the earliest history of the State been subject to police regulation and the power to license and regulate them has been conferred upon cities subject to no other limitations than those imposed by the constitution upon the Gen-

eral Assembly itself, so that unless the constitution forbids the regulation imposed by the city of Chicago the ordinance is a valid exercise of legislative power. In *Metropolis Theater Co.* v. *City of Chicago,* 246 Ill. 20, the doctrine of *Cecil* v. *Green* was repeated, and it was held that the whole legislative power for the regulation of theaters had been conferred upon municipalities; and this was the doctrine of *Block* v. *City of Chicago*, 239 Ill. 251, and *Nahser* v. *City of Chicago*, 271 id. 288. Police power was defined by Chief Justice Shaw in *Commonwealth* v. *Alger*, 7 Cush. 84, as "the power vested in the legislature by the constitution to make, ordain or establish all manner of wholesome, reasonable laws, statutes or ordinances, either with penalties or without, not repugnant to the constitution, as they shall judge to be for the good and welfare of the commonwealth and the subjects of the same." It extends to the prohibition of anything which in the reasonable exercise of the legislative judgment can be regarded as hurtful to the community, and there can be no question that the plan by which patrons of the theater, because of arrangements between the managers and ticket brokers or scalpers, are required to pay more than the advertised prices of admission, in which the manager of a theater shares, is unfair and injurious to the public and contrary to the public welfare. In Cooley on Torts (2d ed. 336) it is said: "Theaters and other places of public amusement exist wholly under the authority and protection of State law and their managers are entirely licensed by the State, and in conferring a license it is no doubt competent for the State to impose the condition that the proprietor shall admit or accommodate all persons impartially." And this is stated as a general principle and not with reference to civil rights acts passed under amendments to the Federal constitution, aimed against discrimination because of race, color or previous condition of servitude. To give it a meaning that a municipality may make a condition that the licensee shall not vio-

late civil rights acts, which carry their own sanction without regard to municipal regulation, would be ridiculous. The General Assembly having legislative authority to license and regulate theaters and to exercise the police power, has by the 41st paragraph of article 5 of the Cities and Villages act given authority "to license, tax, regulate, suppress and prohibit hawkers, peddlers, pawnbrokers, keepers of ordinaries, theatricals and other exhibitions, shows and amusements, and to revoke such license at pleasure." Under that provision the city of Chicago could exercise the entire legislative authority of the State, and unless the relator is protected by the constitution in the injurious, fraudulent and discriminatory practice prohibited by the ordinance the demurrer was improperly sustained.

Counsel for the appellee object to the ordinance because they say that it is not aimed at the prevention of fraud and misrepresentation but is an attempt to destroy the business of ticket brokers, while at the same time they complain that the ordinance will interfere with the arrangements which they claim a constitutional right to make. No ticket broker or scalper is concerned with this suit and none is represented by the appellee, and if the ordinance merely prohibits the innocent business of ticket brokers the appellee will not be harmed. The argument, however, concerning the rights of ticket brokers to buy and sell tickets and the right of appellee to sell to them is an effort to raise a false issue in no manner involved in the question whether the court erred in sustaining the demurrer to the answer. The answer alleged that the license was refused because appellee would not agree to obey the requirement of the ordinance for impartial treatment of ticket buyers and to stop the practices set forth in the answer. There is nothing in the answer about purchasers of tickets, whether brokers or not, or their right to re-sell tickets at a profit. The manifest object of the ordinance is to compel impartial treatment of all buyers of tickets by the licensee. It is so interpreted by

counsel for the appellants. The corporation counsel in his brief and argument says: "The purchaser of such tickets, so far as this ordinance is concerned, may re-sell them at an advanced price or do anything else with them which he may desire to do." Considering the whole ordinance with its evident purpose, it does not prohibit sales to brokers or any other class of persons, but is designed to prevent theater owners from entering into such arrangements as are stated in the ordinance. The real and substantial argument for appellee is that the legislative power does not extend to compelling a theater owner to treat the public impartially in the sale of its tickets, and in the argument it is contended from first to last that that question was decided in the consolidated cases of *People* v. *Steele* and *People* v. *Altschul,* 231 Ill. 340, and the four cases decided in *City of Chicago* v. *Powers,* 231 Ill. 560, and that the doctrine of *stare decisis* requires the court to affirm the judgment of the superior court. This is a total misapprehension of the questions decided in either of those cases. What was decided in a particular case is to be determined by the facts and the question involved. (*Brown* v. *Coon,* 36 Ill. 243.) There was no question related to the one here involved in either of those cases, and the only similarity is that the suits concerned theater owners and ticket brokers or scalpers, and it is only by contending that this ordinance is designed to break up the legitimate business of ticket brokers that any resemblance is found.

In 1907 the General Assembly passed an act prohibiting the sale of tickets for theaters, circuses and places of public amusement for more than the price printed thereon. That was the sole purpose of the act and the only subject expressed in the title. (Laws of 1907, p. 269.) To make the prohibition effective it required the owner to print on the ticket the price, with the following words: "This ticket cannot be re-sold for more than the price printed hereon." That was the only requirement of the theater owner and

the only connection he had with the act. Edward W. Steele, manager of the Colonial Theater, sold a ticket of admission to Philip J. Altschul for $1.50, which was printed on the face of the ticket and was the price of admission, and Altschul sold the ticket to James Bell, a policeman, for $2 at a desk in the Morrison Hotel, where he conducted the business of selling theater tickets. Steele and Altschul were each convicted in the municipal court for violation of the act. The charge against Steele was that he had not made it a part of his contract by printing on the face of the ticket that it should not be re-sold for more than $1.50, and the charge against Altschul was that he sold the ticket which he had bought and paid for, for more than he paid for it. The only question involved that was decided or could have been decided was whether the statute was an invasion of the constitutional right of Altschul to sell a ticket for more than he had paid for it, and the right of Steele to sell the ticket without making it a part of the contract that Altschul should not sell it for more than he paid. The decision was that the act, which prohibited the manager of a theater from selling tickets to brokers at the regular price charged to everybody, with absolute impartiality to all patrons of the theater so far as he was concerned, unless he made it a part of his contract that the purchaser should not re-sell it for a greater price and that the purchaser should not sell it for more than he paid for it, was contrary to constitutional right. The correctness of that decision is not in question in this case and has nothing whatever to do with it. In the case of *City of Chicago* v. *Powers, supra,* the city passed an ordinance having the same provisions and the same object as the statute, and four cases were consolidated in this court. The decision followed that of *People* v. *Steele, supra,* because the people of the city of Chicago attempted to do by an ordinance what the General Assembly could not do by a statute. The decisions in those cases were in accordance with the weight of authority that the

constitutional liberty of the ticket broker is violated when he is prohibited altogether from carrying on his business. (Tiedemann on Limitation of Police Power, 293.) They were, in effect, the same as the decision of the Supreme Court of the United States in *Adams* v. *Tanner*, 244 U. S. 590, in which it was held that the statute making it a criminal offense to collect fees from workers for furnishing them with employment was a violation of constitutional rights, because it was not a proper regulation of employment agencies for the public welfare but was destructive of the lawful and useful calling even if it was carried on in an upright way. The case of *People* v. *Weiner*, 271 Ill. 74, was decided on the same principle as the other cases, because the ordinance was entirely destructive of the business of making mattresses from second-hand material, which might be absolutely pure, healthful and free from any objection, and that ordinance cannot be likened in any particular to an ordinance to prevent discrimination and practices hurtful to the public. In every case the right of regulation has been recognized, but the power to destroy a legitimate business, which was attempted by the statute and ordinance held void in the *Steele* and *Powers cases,* has been denied.

Much is said by counsel for appellee about the quotation in the *Steele case* from *Collister* v. *Hayman,* 183 N. Y. 250, and other statements of the same character about the nature of the business of running a theater. The meaning and effect of the quotation and its utter and absolute inapplicability to this case will be apparent when the facts are stated. The defendants were managers of the Knickerbocker Theater, and the plaintiff, Collister, brought the action to restrain them from interfering with his business of selling on the sidewalk and outside of the prohibited limits tickets of admission to the theater, which was his business and from which he derived an income of $4000 a year. On the tickets there was printed, "Tickets purchased on the sidewalk will positively be refused at the

door." The court said the business was a private one clothed with a public interest, and the owner had a right to regulate the terms of admission in any reasonable way and had a right to prohibit ticket scalping by the notice on the ticket that if bought from a ticket scalper it would be refused at the door. Surely neither the Court of Appeals nor this court intended an affront to ordinary intelligence by holding that because the owners of the Knickerbocker Theater could prohibit ticket scalping the city of New York or a municipality of this State could not. The quotation and similar statements in the *Steele case* were evidently for the purpose of making clear that the business was a private one.

The recent case of *Wolcott* v. *Shubert,* 217 N. Y. 212, was a suit against the proprietor of the theater for excluding a dramatic critic who had written an objectionable criticism, and the question was whether a theater proprietor could, under the Civil Rights act of New York of 1813, exclude from it a person upon any other ground than race, creed or color. The court decided that at common law the proprietor of a theater might admit or exclude persons at his pleasure, and the State Civil Rights act did not destroy that common law right where the exclusion applied alike to all persons and was not based on race, creed or color. That question has no relation, however remote, to the question here involved.

In *Ex parte Quarg,* 149 Cal. 79, the statute under which Quarg was convicted provided that every person who offered for sale or sold any tickets to theaters or any other public place of amusement at a price in excess of that charged originally by the management of such theater or place of amusement should be guilty of a misdemeanor, and the decision that the statute infringed upon constitutional rights of property is of the same character as the decision in the *Steele case* and other cases where the purpose was to destroy a business not injurious to the public

welfare by prohibiting a broker from making profit. The statement in the *Steele case* that the manager of a theater may fix the price arbitrarily and raise or lower it at his will, and having advertised a performance is not bound to give it, and having advertised the price he is not bound to sell tickets at that price, has no possible relation to the question whether under the police power the manager of a place of public entertainment may be compelled to treat patrons impartially by putting an end to an existing system by which theater owners and ticket scalpers are confederated together to compel a portion of the public to pay a different price from others. The question here is whether the constitution protects a theater owner in a scheme by which an applicant for a ticket is told that the house is sold out, and upon going to the ticket scalper is permitted to select the part of the house where he desires to sit and the ticket scalper turns to the telephone and directs the theater to send up a ticket, which is sent and sold at an advanced price.

The business of the theater owner or manager is private in the sense that no franchise from the State is required, but it is no more private than the business of hawkers, peddlers, pawnbrokers, keepers of ordinaries, circuses or other shows and amusements which invite the public generally to attend and exist entirely by the public. A place of amusement to which the public are generally invited upon no condition but the payment of a fixed charge is public in a general sense, and it differs radically from accommodations offered by a merchant or professional man, who, while he invites everyone to enter, does so only for the purpose of selling to each individual services or merchandise. (*Jones* v. *Roller Skating Rink*, 136 Wis. 595.) In *Western Turf Ass'n* v. *Greenberg*, 140 Cal. 357, the statute was sustained which provided that it should be unlawful for the proprietor of any public place of amusement or entertainment to refuse admittance to any person over the age of twenty-

283 — 7

one years who presented a ticket of admission acquired by purchase, provided that any person under the influence of liquor or guilty of·boisterous conduct or any person of lewd or immoral character might be excluded. The Supreme Court of the United States upheld the validity of the statute as free. from objection under the Federal constitution in *Western Turf Ass'n* v. *Greenberg,* 204 U. S. 363. Greenberg's suit was for being unlawfully excluded from defendant's race-course, and the court said that the act was not a violation of constitutional rights, as it was applicable alike to all persons, corporations or associations conducting places of public amusement or entertainment, and of still less merit was the claim that the statute abridged the rights of citizens or deprived the defendant of his rights without due process of law, and that the statute was only a regulation of places of entertainment and amusement upon terms of equal and exact justice to everyone holding a ticket of admission who was not at the time under the influence of liquor, boisterous of conduct or of lewd or immoral character, and was valid. The court said that a place of public entertainment and amusement is so far affected with the public interest that the State may, in the interest of good order and fair dealing, require the owner to perform . its engagement to the public and recognize its own tickets of admission. It is true that individuals are not forced to buy tickets from scalpers and are acting upon their own volition, but they are making their choice between paying the higher price and not witnessing the performance to which the public are invited. Witnessing a theatrical performance is not one of the necessaries of life, but that affords no reason why the legislative power should not be exerted to prevent misrepresentation and fraud in the sale of theater tickets by the theater owners themselves and to require fair and impartial treatment of the public. That the business, although private, is clothed with a public interest was recognized and stated in the *Steele case,* and there is

no provision of the statute which limits the legislative power to prohibit the unquestioned evils of the existing system. No provision of the State or Federal constitution prohibits the exercise of such power.

The judgment is reversed and the cause remanded, with directions to overrule the demurrer, and for further proceedings not inconsistent with this opinion.

*Reversed and remanded, with directions.*

Mr. JUSTICE DUNN, dissenting.