THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* REUBEN WELLER, Appellant.

Constitutional law — police power — power of legislature to regulate acts interfering with free negotiation between producer and consumer — no distinction between commodities and privileges or licenses for which a general public demand exists — declaration of legislature as to existing conditions guide to courts in consideration of validity of legislation — statute imposing reasonable restrictions upon business of reselling tickets of admission within police power of legislature and valid.

1. The power of the legislature in a proper case to " promote the public welfare " by regulating or restricting acts which interfere with free negotiation between the consumers and producers of a commodity in common use and impede the operation of the laws of supply and demand should not be doubted and there is no distinction in principle between commodities and privileges or licenses, such as tickets of admission, it there exists a general public demand for them and they are in common use.

2. The declaration of the legislature (Cons. Laws, ch. 20, § 167) " that the price of or charge for admission to theatres, places of

amusement or entertainment, or other places where public exhibitions, games, contests or performances are held is a matter affected with a public interest," is not conclusive upon the courts, for the courts must in each case decide whether in fact the public interest justifies an attempted restriction by the state upon the liberty of its citizens. Yet the indication by the legislature of its own purposes may certainly in some degree guide the courts in their consideration of the validity of the legislative assertion of power.

3. Where the legislature has pointed out that the statute is enacted "for the purpose of safeguarding the public against fraud, *extortion*, exorbitant rates and similar abuses," and it clearly appears that under conditions permitting ticket brokers or speculators to charge any price which they can obtain from a buyer upon the resale of tickets of admission, abuses are not only reasonably to be feared, but actually exist, the legislature clearly has the power to remedy such abuse of "*extortion*" by imposing reasonable restrictions upon the business of reselling such tickets.

4. The statute (General Business Law, §§ 167–174, as amended by chapter 590, Laws of 1922), therefore, which confines said business to persons obtaining a license and merely prohibits brokers from charging more than a fixed and presumably reasonable profit upon the resale of tickets of admission and thereby reasonably tends to end the extortion, which the legislature could properly find exists and constitutes an abuse so general and of such importance as to call for legislative remedy, is reasonable and valid, the legislature, under the police power, having clearly the right to attempt to remedy the abuse.

5. The courts are called upon to determine only whether the legislature has acted within its powers in enacting this legislation; the judges have no disposition, and the courts have no right, to pass upon the wisdom of its exercise.

*People* v. *Weller*, 207 App. Div. 337, affirmed.

(Argued January 10, 1924; decided February 19, 1924.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 30, 1923, which affirmed a judgment of the Court of Special Sessions of the city of New York, convicting the defendant of a violation of sections 168 and 169 of the General Business Law, forbidding the resale of tickets of admission to a theatre or other place of amusement or entertainment by any person, firm or corporation without a license.

*Louis Marshall* and *James Marshall* for appellant. Chapter 590 of the Laws of 1922 is unconstitutional and void because it deprives the defendant of his liberty and property without due process of law in violation of article 1, section 6, of the Constitution of the state of New York and of the Fourteenth Amendment to the Constitution of the United States. (*People ex rel. Tyroler* v. *Warden of the City Prison,* 157 N. Y. 116; *People ex rel. Fleischmann* v. *Caldwell,* 64 App. Div. 46; 168 N. Y. 671; *People* v. *Marks,* 64 Misc. Rep. 679; *Collister* v. *Helman,* 183 N. Y. 250; *Matter of Newman,* 109 Misc. Rep. 622; *People* v. *Budd,* 117 N. Y. 15; *Budd* v. *New York,* 143 U. S. 517; *Fisher Co.* v. *Woods,* 187 N. Y. 90; *People ex rel. Dwyer* v. *Weber,* 198 N. Y. 1; *People ex rel. Moscowitz* v. *Jenkins,* 202 N. Y. 53; *People* v. *Ringe,* 197 N. Y. 143; *Hauser* v. *North British & Merc. Ins. Co.,* 206 N. Y. 455; *People ex rel. Niger* v. *Van Dell,* 85 Misc. Rep. 92.) Carefully adjudicated cases have denied the existence of the power of the legislature to fix the price of theatre tickets. (*People* v. *Newman,* 109 Misc. Rep. 622; *Ex parte Quarg,* 149 Cal. 79; *People* v. *Steele,* 231 Ill. 340; *City of Chicago* v. *Powers,* 231 Ill. 531; *People* v. *Weiner,* 271 Ill. 74; *Chicago* v. *Netcher,* 183 Ill. 104.) The business of conducting a theatre and consequently of selling or procuring tickets of admission is not affected by a public interest. (*Munn* v. *Illinois,* 94 U. S. 113; *G. A. Ins. Co.* v. *Kansas,* 233 U. S. 339; *Penn. Coal Co.* v. *Mahon,* 260 U. S. 293; *Yellow Taxicab Co.* v. *Gaynor,* 82 Misc. Rep. 94; 159 App. Div. 893; 212 N. Y. 97; *Terminal Taxicab Co.* v. *Dist. of Columbia,* 241 U. S. 252; *Schmidinger* v. *Chicago,* 226 U. S. 578; *Rast* v. *Van Deman,* 240 U. S. 342; *People ex rel. Armstrong* v. *Warden,* 183 N. Y. 226; *Wolff Packing Co.* v. *Court,* 262 U. S. 522.)

*Joab H. Banton, District Attorney* (*Robert D. Petty* and *Felix C. Benvenga* of counsel), for respondent. The pro-

vision requiring ticket sellers to obtain a license is valid. (*Matter of McAneny* v. *Bd. of Estimate*, 232 N. Y. 377; *Devoy* v. *Craig*, 231 N. Y. 186; *United States* v. *Jin Fuey Moy*, 241 U. S. 394; *Bratton* v. *Chandler*, 260 U. S. 110; *People ex rel. Armstrong* v. *Warden*, 183 N. Y. 223; *People* v. *Beakes Dairy Co.*, 222 N. Y. 416; *Munn* v. *Illinois*, 94 U. S. 113; *Ratcliff* v. *Stock-Yards Co.*, 74 Kan. 1; *Wolff Co.* v. *Court*, 262 U. S. 522; *Egan* v. *City & County of San Francisco*, 133 Pac. Rep. 294; *Los Angeles County* v. *Dodge*, 197 Pac. Rep. 403; *Schieffelin* v. *Hylan*, 236 N. Y. 254.) The price restriction feature of the statute is valid. (*G. A. Ins. Co.* v. *Kansas*, 233 U. S. 389; *Bloch* v. *Hirsch*, 256 U. S. 135; *Budd* v. *New York*, 143 U. S. 517; *Brass* v. *Stoser*, 153 U. S. 391; *People* v. *Thompson*, 119 N. E. Rep. 41; *Collister* v. *Hayman*, 183 N. Y. 250; *People* v. *Budd*, 117 N. Y. 1; *People ex rel. Durham R. Corp.* v. *La Fetra*, 230 N. Y. 429; *Ford* v. *State*, 37 Atl. Rep. 172.) The passage of the statute was a proper exercise of the police power. (*People ex rel. D. R. Co.* v. *La Fetra*, 230 N. Y. 429; *Sligh* v. *Kirkwood*, 237 U. S. 52; *Union D. G. Co.* v. *Georgia P. S. Corp.*, 248 U. S. 372; *Muller* v. *Oregon*, 208 U. S. 412; *People* v. *Schweinler Press*, 214 N. Y. 395.)

*Joseph S. Auerbach* and *Charles H. Tuttle* for the New York World *et al.*, *amici curiæ.* Sections 167 and 168 of the General Business Law which regulate the business of reselling theatre tickets are constitutional. (*Gibbons* v. *Ogden*, 9 Wheat. 1; *Noble Bank* v. *Haskell*, 219 U. S. 111.)

LEHMAN, J. The defendant has been convicted upon an information which charged that he " unlawfully did engage in the business of reselling tickets of admission to a theatre and place of amusement and did resell to one John Cunniff, a ticket of admission to a certain theatre and place of amusement called Palace Theatre, without first having obtained the necessary license thereof from the

comptroller of the state of New York as required by law."
He does not deny that he has committed the acts charged
in the information, but he contends that the provisions of
the General Business Law (Cons. Laws, ch. 20), which
seek to regulate the business of reselling tickets of admis-
sion to theatres and places of public amusement transcend
the power of the legislature and are unconstitutional and
void. These provisions were inserted in the General
Business Law (sections 167 to 174) by chapter 590 of the
Laws of 1922. They prohibit any person, firm or corpora-
tion from engaging " in the business of reselling any
tickets of admission or any other evidence of the right of·
entry to a theatre, place of amusement or entertainment,
or other places where public exhibitions, games, contests
or performances are held without having first procured a
license therefor from the comptroller." Each applicant
for a license is required to file with the application therefor
a bond in the penal sum of one thousand dollars condi-
tioned that the obligor will not be guilty of any fraud or
extortion and will not exact or receive a price for any such
ticket or evidence of the right of entry in excess of the
price authorized by the statute. In case of a breach of
the condition of the bond, suit may be brought to recover
upon the bond, and in addition the comptroller is
empowered to revoke the license. The statute further
provides that " no licensee shall resell any such ticket
* * * at a price in excess of fifty cents in advance
of the price printed on the face of such ticket or other
evidence of the right of entry. Every person, firm or
corporation who owns, operates or controls a theatre,
place of amusement or entertainment, or other place
where public exhibitions, games, contests, or perform-
ances are held shall, if a price be charged for admission
thereto, print on the face of each such ticket or other
evidence of the right of entry the price charged therefor
by such person, firm or corporation."

The business of reselling tickets of admission to places

1924.]          Opinion, per Lehman, J.          [237 N. Y. 316]

of public amusement has always been regarded as a lawful business which serves the convenience and promotes the comfort of persons who desire to purchase at convenient times and places tickets which otherwise they could purchase only at the office established by the management of the places of amusement for the sale of tickets in advance of the performance until the full supply of tickets should be disposed of. The statute has not rendered the business unlawful, but it seeks to confine the business to persons obtaining a license, and to restrict drastically the price at which tickets may be resold. Such restrictions interfere with the liberty of those desiring to engage in that business and are lawful only if imposed by the legislature in the exercise of what has come to be described as the " police power."

The time has probably passed when any useful purpose can be served by further discussion of the general nature of the police power or even in most cases by citation of general definitions, though contained in opinions which we might consider authoritative. When the attempted exercise by the legislature of the power to regulate certain kinds of business and especially to fix prices was first challenged in the courts, the courts laid down the general rule that the power to regulate and fix prices depends upon whether the business is so " clothed with a public interest " as to justify reasonably the imposition of regulations calculated to remove abuses, or perhaps even to secure benefits, in regard to features which clearly affect the public. This general rule is now well recognized but the limits of its application are still somewhat shadowy and indefinite. As the court pointed out in *Wolff Packing Co.* v. *Industrial Court* (262 U. S. 522, at page 538): "All business is subject to some kinds of public regulation; but when the public becomes so peculiarly dependent upon a particular business that one engaging therein subjects himself to a more intimate public regulation is

21

only to be determined by the process. of exclusion and inclusion and to gradual establishment of a line of distinction." . In the case of *People* v. *Budd* (117 N. Y. 1, at page 15) this court, speaking through Judge Andrews, in pointing out similar considerations, said: " It must be conceded that the uses to which a man may devote his property, the price which he may charge for such use, how much he shall demand or receive for his labor, and the methods of conducting his business are, as a general rule, not the subject of legislative regulation. These are a part of our liberty, of which, under. the constitutional guaranty, we cannot be deprived. We have no hesitation in declaring that. unless there are special conditions and circumstances which bring the business * * * within principles which, by the common .law and practice of free governments, justify legislative control and regulation in the particular case, the statute * * * cannot be sustained." Decisions of this and other courts since that time have merely tended by the process of inclusion and exclusion to indicate the nature of the " special conditions and circumstances " which may bring a business within principles which justify legislative control and regulation, and these cases may be referred to profitably only in so far as the " special conditions and circumstances " considered therein are analogous to the special conditions and circumstances under consideration by us.

The courts have frequently pointed out that the business of conducting. a theatre or place of public amusement is " affected with a public interest " and it is urged by the People that by reason of this public interest the legislature may regulate the price of theatre tickets and that the business of reselling theatre tickets is so closely connected with the business of conducting the theatre that the legislature may likewise regulate the price that may be demanded or received upon the resale of tickets by " brokers " or " speculators." " To say that a

business is clothed with a public interest, is not to determine what regulation may be permissible in view of the private rights of the owner. * * * It is not a matter of legislative discretion solely. It depends on the nature of the business, on the feature which touches the public, and on the abuses reasonably to be feared. * * * The extent to which regulation may reasonably go varies with different kinds of business." (*Wolff Packing Co.* v. *Industrial Court, supra,* p. 539.) In *People* v. *King* (110 N. Y. 418) this court by ANDREWS, J., pointed out that though the business of conducting a theatre or place of public amusement is one in which any one may engage in the absence of any statute or ordinance, yet the right of the legislature to regulate the licensing of theatres and shows and to " enforce restrictions relating to such places in the public interest " has never been challenged, and that " the quasi-public use to which the owner of such a place devoted his property, gives the legislature a right to " interfere " when in its judgment " the public had an interest to prevent race discrimination between citizens, on the part of persons maintaining places of public amusement." Again in *Aaron* v. *Ward* (203 N. Y. 351) the court pointed out that the business of maintaining a theatre cannot be regarded as strictly private but has always been held subject to legislative control (citing cases). Yet, obviously, the mere fact that the public interest in preventing race discrimination between citizens, in places of public resort, or in the maintenance of good order in such places justifies legislative regulation, which will reasonably tend to serve the public interest in these respects, is by no means decisive of the question of whether abuses reasonably to be feared from unrestricted and unregulated resales of theatre tickets, so closely affect the public interest as to place the regulation of the business of reselling tickets within the legislative control, to the extent of permitting the legislature to limit the price which may be demanded or received upon such resale.

Section 167 of the statute recites that " it is hereby determined and declared that the price of or charge for admission to theatres, places of amusement or entertainment, or other places where public exhibitions, games, contests or performances are held is a matter affected with a public interest and subject to the supervision of the state for the purpose of safeguarding the public against fraud, extortion, exorbitant rates and similar abuses." The declaration of the legislature that the price or charge for admission is a matter affected with the public interest is not conclusive upon the courts; for the courts must in each case decide whether in fact the public interest justifies an attempted restriction by the state upon the liberty of its citizens. Not the assertion of the legislature but only the actual existence of conditions which would justify the exercise of legislative control, must be the basis of a valid exercise of the police power. Yet the indication by the legislature of its own purposes may certainly, in some degree, guide the courts in their consideration of the validity of the legislative assertion of power.

Statutes and ordinances prohibiting the resale of theatre tickets at an advance over the price printed on such tickets have been held unconstitutional in *People* v. *Steele* (231 Ill. 340); *City of Chicago* v. *Powers* (231 Ill. 560); *Ex parte Quarg* (149 Cal. 79). All these decisions are to some extent based upon the view that in effect the purpose of the statute was to fix prices. (See dissenting opinion in *German Alliance Ins. Co.* v. *Kansas*, 233 U. S. 389, at page 431.) In all these cases the reasoning of the court seems to rest upon two premises: *First*, that the business of conducting a place of amusement is essentially a private business and the legislature has no more power to fix the prices that may be demanded or received in that business than it would have to regulate the price that may be demanded or received by a tailor, an artisan or a merchant upon the sale of services or commodities. *Second*, that the business

1924.] Opinion, per LEHMAN, J. [237 N. Y. 316]

of reselling tickets of admission is a lawful business performing a useful service and that any person carrying on such business should be left free to contract for the performance of such service with any person who desires to avail himself of the service afforded by such business. In passing it may be remarked that in the case of *People* v. *Thompson* (283 Ill. 87) the court stated that " the business of the theatre owner or manager is private in the sense that no franchise from the state is required, but it is no more private than the business of hawkers, peddlers, pawnbrokers, keepers of ordinaries, circuses or other shows and amusements which invite the public generally to attend and exist entirely by the public. A place of amusement to which the public are generally invited upon no condition but the payment of a fixed charge is public in a general sense, and it differs radically from accommodations offered by a merchant or professional man, who, while he invites everyone to enter, does so only for the purpose of selling to each individual services or merchandise." Whether the public character of the places of amusement pointed out in this distinction is, in itself, sufficient to give the legislature power to control the prices which may be charged by the proprietor of a place of public amusement has not even been considered by us, for the present statute does not attempt to fix the price which may be charged by the proprietor, but merely requires him to " print on the face of each such ticket or other evidence of the right of entry, the price charged therefor " by him. No theatre proprietor is now challenging that provision so we are not called upon to express any opinion concerning its validity, though a similar provision in an ordinance of the city of Chicago was sustained in the case of *People* v. *Thompson* (*supra*). The question of whether the public is so interested in gaining admission to places of public amusement that any person who assumed to furnish tickets of admission to the public has subjected himself to the control of

the legislature in regard to the price he may demand or receive; or, in other words, whether the interest of the public in obtaining admission for a reasonable price is such that a statute which regulates the price instead of leaving the price to be fixed by free agreement, might reasonably be said to promote the public welfare, is determinative of the validity of the statute, now under consideration, only if the real abuse which the legislature has found exists, or is reasonably to be feared, and which the legislature seeks by the statute to remedy or avoid, is the abuse of unreasonably high or " exorbitant rates " charged for a quasi-public service.   The legislature has, however, pointed out that the statute is enacted " for the purpose of safeguarding the public against fraud, *extortion,* exorbitant rates and similar abuses " and we may profitably consider in the first place whether " extortion " or exorbitant prices exacted by oppression instead of fixed by free agreement, is not the real abuse which the legislature is seeking to remedy, and if so whether the legislature has the power to remedy the abuse of " *extortion* " by price regulation.

We are, of course, not confining the word " extortion " to the definition of the crime of extortion in the Penal Law, for the legislature could not have intended it in that narrow sense.   We mean, and we think the legislature intended, by that word, the exaction of money made possible because of oppressive conditions or circumstances, as distinguished from the receipt of money as a result of free negotiations and willingly paid for a service or commodity.   In the present case a witness, produced by the defendant himself, testified that those engaged in the business of reselling tickets are compelled by theatre managers, even before the first performance of a new play, to buy and pay for seats eight weeks in advance.   They dispose of approximately two million theatre seats a year, or at least half of the seats in the orchestra of the various theatres, and at times they pay

commissions or bonuses to the management to obtain seats. Persons desiring seats near the front cannot obtain them at the box office of the theatre. " The best they could get for any show is the fifteenth or sixteenth row." Under these circumstances it cannot be doubted that when ticket brokers or speculators are permitted to charge any price which they can obtain from a buyer upon the resale of tickets of admission, abuses are not only reasonably to be feared, but actually exist. Indeed the courts have recognized the existence of abuses, due to these conditions, even before this statute was enacted by the legislature. Without unnecessarily multiplying quotations from opinions of the courts, we may point out that in *Collister* v. *Hayman* (183 N. Y. 250, 254) this court stated: "A ticket speculator is one who sells at an advance over the price charged by the management. Speculation of this kind frequently leads to abuse, especially when the theatre is full and but few tickets are left, so that extortionate prices may be exacted. A regulation of the proprietor, which tends to protect his patrons from extortionate prices is reasonable and he has the right to make it part of the contract and a condition of the sale. Unless he can control the matter by contract and by conditions appearing upon the face of the ticket which is evidence of the contract, he may not be able to control it at all, but must leave his patrons to the mercy of speculators, such as the plaintiff, who, as he alleges, was accustomed to make at least $4,000 a year from his business. That amount, of course, came out of patrons of the theatre and if other ticket speculators carrying on the same business at various theatres in the city of New York are equally successful, the additional expense to theatre-goers must be very large." The same respect for individual liberty, which should ordinarily deter the legislature from an attempt to restrict freedom, might under special circumstances impel the legislature to seek a remedy for conditions which, unless controlled, will leave the patrons

of the theatre " to the mercy of speculators." The liberty of the individual citizen to contract freely should be jealously guarded even from encroachments by the state, and where barter is free and demand creates supply perhaps economic laws and not the fiat of the state is the proper corrective of exorbitant prices; but where the liberty of the individual citizen to contract freely has been restricted by the circumstance that a man or group of men has obtained control of the supply of a commodity which the public desires or commonly uses, and this control is used to compel the individual to pay any price which may be demanded though that price be far beyond the price which would be fixed by free contract between consumer and producer, a legislative mandate which regulates the exercise of the compulsive force may in effect restore and not diminish the liberty of the individual.

The ancient statutes against " engrossing " and " forestalling " were essentially examples of such legislative mandates. Through them Parliament sought to preserve freedom of trade by prohibition of acts which tend to restriction of free competition between the traders themselves, and " to prevent any man or set of men from possessing the power to arbitrarily determine the price at which an article of common use shall be sold because he who controls prices is the master of the world." (*State* v. *Duluth Board of Trade*, 107 Minn. 506, at page 529.) Experience and modern economic opinion based on that experience have so demonstrated the unwisdom of many of these statutes that a court to-day might hesitate to sustain as a reasonable exercise of the police power some of the restrictive statutes which seemed obviously proper centuries ago, yet the power of the legislature in a proper case to " promote the public welfare " by regulating or restricting acts which interfere with free negotiation between the consumers and producers of a commodity in common use and impede the operation of the laws of

supply and demand should not be doubted (see opinion of Chief Justice WHITE in *Standard Oil Co.* v. *United States*, 221 U. S. at pages 50 to 58), and we see no distinction in principle between commodities and privileges or licenses, such as tickets of admission, if there exists a general public demand for them and they are in common use. It may be impossible, and it certainly would be unwise, to attempt to define in general terms the circumstances which may justify legislative intervention or the degree of regulation which is reasonable, but in the present case the fact that the business of conducting places of public amusement has always been regarded as affected with a public interest, at least to the extent that it is " competent for the State to impose the condition that the proprietor shall admit or accommodate all persons impartially " (Cooley on Torts [2d ed.], 336); the evidence that the ticket brokers or speculators at least in the city of New York, with or without the concurrence of the theatre managers, purchase in advance so many of the seats in the orchestra of all the theatres that the general public cannot purchase at the box office seats in the first fifteen rows and are compelled to purchase these seats, if at all, from the ticket brokers; and the fact that the public desire for admission to places of amusement is so great that exorbitant prices for tickets of admission far beyond those charged by the producers can be extorted from the general public by reason of this control of the supply by the brokers, in our opinion clearly justify reasonable restrictions by the legislature upon the business of reselling such tickets. The legislature has the power to regulate reasonably acts which lead to abuses, through which the general public is compelled to pay a group of men for services which, at least in part, are not desired by the public, especially where such acts occur in a business which is measurably affected with a public interest. The correction of recognized abuses need not be left to the voluntary action of the very group of men who have

[237 N. Y. 316]    Opinion, per LEHMAN, J.    [Feb.,

created the abuse and who apparently believe that the continuance of such abuses will profit them.

The sole question which we must still consider is whether the regulation of the legislature is reasonable. The statute does not forbid the ticket brokers from exercising their lawful business nor from rendering the same service to the public as they have previously rendered, and in this respect the statute differs from the statutes or ordinances condemned by the courts of Illinois and California in the cases cited above. It permits the brokers to charge an advance of fifty cents above the price charged by the managers of the theatre, and there is some evidence from which it might be inferred that this charge would afford reasonable compensation for the services rendered by them, and that it represents the usual profit made by those conducting the business on a considerable scale. It does not prohibit the producing manager from charging the public all that the public will pay, but leaves the regulation of price between producer and consumer to the free play of the laws of supply and demand. It does not even prohibit brokers from obtaining control of the supply of choice seats in advance of public sale. It merely prohibits brokers from charging more than a fixed and presumably reasonable profit whether they acquire such control or not and thereby it reasonably tends to end the extortion which, the legislature could properly find, exists and constitutes an abuse which is so general and of such importance as to call for legislative remedy. The question of whether the business of conducting places of public amusement is so " affected with a public interest " as to justify the regulation of the price of admission in order to insure the right of the public to admission for a reasonable charge is not directly involved in this decision. But even if we were to assume that the interest of the public in such business is not in itself sufficient to justify regulation of price, yet a statute which reasonably limits the amount which brokers may charge upon the

resale of a ticket in order to end the abuse of extortion of large additional amounts by reason of control of the supply should not be condemned merely because the legislature has seen fit to use price regulations as the instrument which may accomplish the desired purpose. Even though the ultimate purpose of statutes which regulate prices may be the protection of the public from excessive charges, alike where the price regulation is directed against the abuse of extortion through control of supply, by one who does not produce the supply, and where the price regulation is directed against the alleged abuse of unreasonably high prices secured by a producer through negotiation; yet in the one case the statute restricts the freedom of the individual in the performance of acts which though perhaps lawful are calculated to injure others, while in the other case the statute restricts the freedom of the individual in the performance of acts which are of such benefit to the public that even the price to be charged for them is a matter of public concern. The special conditions and circumstances in the one case may bring a business within principles which by the common law and practice of free governments justify legislative control and regulation though such control might not be justified merely by the public character of the business.   The existence of extortion due to present unregulated conditions in the business of reselling tickets of admission to places of public amusement is widely recognized; the abuse is due to acts of the ticket brokers alone or in conjunction with producers, and these acts are calculated to injure large numbers of the public in connection with a business which is at least to some degree affected with a public interest.   The legislature under the police power has in our opinion clearly the right under these circumstances to attempt to remedy the abuse.   The proposed remedy encroaches upon the liberty of the individual only to the extent that the legislature might properly regard as reasonably calculated to remedy

the abuse, and the people have placed upon the legislature the responsibility of determining whether the remedy is wise and will promote the public welfare. The courts are called upon to determine only whether the legislature has acted within its powers in enacting this legislation; the judges have no disposition, and the courts have no right, to pass upon the wisdom of its exercise.

For these reasons the judgment of the Appellate Division should be affirmed.

Hiscock, Ch. J., Cardozo, Pound, McLaughlin and Crane, JJ., concur; Andrews, J., dissents.

Judgment affirmed.