THE PEOPLE OF THE STATE OF NEW YORK, on the Complaint of WILLIAM J. McDONOUGH, Plaintiff, *v.* ABRAHAM BRATOWSKY, Defendant.

THE PEOPLE OF THE STATE OF NEW YORK, on the Complaint of WILLIAM J. McDONOUGH, Plaintiff, *v.* EISENBERG FARMS, INC., Defendant.

City Magistrates' Court of New York, Third District, Borough of Manhattan, December 20, 1934.

*Bernard Katzen, Assistant Counsel, Department of Agriculture and Markets,* and *Robert M. Field, Attorney, Division of Market Control, Department of Agriculture and Markets,* for the plaintiff.

*Max Rothenberg,* for the defendants.

Katz, City Magistrate. The defendant Eisenberg Farms, Inc., a wholesale milk dealer, and the defendant Abraham Bratowsky, driver and salesman employed by said corporation, are charged herein with a violation of Laws of 1934, chapter 126, adding new article 21 and article 21-A to the Agriculture and Markets Law of the State of New York, in that the defendant Bratowsky sold to a retailer named Hornung quart bottled grade B milk at seven cents per quart bottle and heavy sweet quart bottled cream at forty cents per quart bottle, whereas the price from wholesaler to retailer for said milk, as fixed by the " milk control board " pursuant to its order No. 74, was nine and three-quarters cents per quart for said grade of milk and fifty-two cents per quart for said grade of heavy sweet cream.

The defendants have each moved for a dismissal of each complaint on the grounds: (1) That there is no provision in law which makes the offense charged a crime for the reason that chapter 126, articles 21 and 21-A, Laws of 1934, known as the " Milk Control " Law, omits the penal provision contained in chapter 158, Laws of 1933, article 25 (as added to Agriculture and Markets Law), also known as the " Milk Control " Law; (2) that chapter 126, articles 21 and 21-A, which defendants are charged to have violated, is unconstitutional because section 258-n thereof grants certain exemptions to co-operative milk dealers and that order No. 74 of the Commissioner permits the sale of milk at certain public milk stations created by the welfare department of the city of New York at a price less than the price required of other retail milk dealers, all of which defendants maintain are discriminatory and class legislation; and (3) that the People have failed to make out a complaint against either or both said defendants upon the facts.

The issues presented to this court must be determined after due consideration of the intent and purpose of the Legislature in enacting articles 21 and 21-A, known as the " Milk Control " Law as now in effect (Laws of 1934, chap. 126).

In 1933 the Legislature saw fit to amend the Agriculture and Markets Law (known as the Farms and Markets Law prior to 1927), by adding article 25, by chapter 158, known as the " Milk Control " Law. Section 300 of said article clearly sets forth that the intent and purpose of said legislation was to " protect the public health and public welfare." This section reads as follows: " This article is enacted in the exercise of the police power of the state, and its purposes generally are to protect the public health and public welfare. It is hereby declared that unhealthful, unfair, unjust, destructive, demoralizing and uneconomic trade practices have been and are now carried on in the production, sale and distribution of

milk and milk products in this state, whereby the dairy industry in the state and the constant supply of pure milk to inhabitants of the state are imperiled. That such conditions constitute a menace to the health, welfare and reasonable comfort of the inhabitants of the state. That in order to protect the well-being of our citizens and promote the public welfare, and in order to preserve the strength and vigor of the race, the production, transportation, manufacture, storage, distribution and sale of milk in the state of New York is hereby declared to be a business affecting the public health and interest. That the production and distribution of milk is a paramount industry upon which the prosperity of the state in large measure depends. That the present acute economic emergency, being in part the consequence of a severe and increasing disparity between the prices of milk and other commodities, which disparity has largely destroyed the purchasing power of milk producers for industrial products, has broken down the orderly production and marketing of milk and has seriously impaired the agricultural assets supporting the credit structure of the state and its local governmental subdivisions. That the danger to the public health and welfare is immediate and impending, the necessity urgent and such as will not admit of delay in public supervision and control in accord with proper standards of production, sanitation and marketing. The foregoing statements of fact, policy and application of this article are hereby declared as a matter of legislative determination."

Section 307 of article 25 provided that " a violation of any provision of this article or of any rule or order of the board " shall be a misdemeanor, and further gave the Board the power to institute certain civil proceedings.

Section 319 of article 25 provided that " the board shall be deemed abolished and the powers, duties and jurisdiction conferred or imposed upon the board by this article shall terminate " March 31, 1934.

However, a day or so prior to the abolition of the Board on March 31, 1934, the Legislature saw fit to repeal article 21 of the Agriculture and Markets Law, Laws of 1922, chapter 48, and in its stead enacted Laws of 1934, chapter 126, article 21, known as the " Milk Control " Law, and article 21-A, known as the " Emergency Milk Control " Law, said article 21-A to expire April 1, 1935.

Undoubtedly the Legislature intended that article 21 should become part of the permanent structure of the Agriculture and Markets Law and that article 21-A was to be only an emergency measure to expire on April 1, 1935; hence the division of chapter 126 into articles 21 and 21-A.

Chapter 126, article 21, creates a division of milk control in the "department of agriculture and markets" with certain general powers to supervise and regulate the entire milk industry in the State of New York and further provides in section 255 thereof that "the commissioner may adopt and enforce all rules and all orders necessary to carry out the provisions of this article." Article 21, section 258-e, provides as follows: "The commissioner may institute such action at law or in equity as may appear necessary to enforce compliance with any provision of the statutes, rules and orders committed to his administration, and in addition to any other remedy under article three of this chapter or otherwise may apply for relief by injunction if necessary to protect the public interest without being compelled to allege or prove that an adequate remedy at law does not exist. Such application may be made to the supreme court in any district or county as provided in the civil practice act and the rules of practice of the court, or to the supreme court in the third judicial district."

True, section 258-e (Laws of 1934) does not provide that "a violation of any provision of this article or of any rule or order of the board" shall be a misdemeanor as contained in section 307, article 25 (Laws of 1933), but the defendants have failed to give consideration to the definite provision contained in section 258-e that the Commissioner may institute civil proceedings "in addition to any other remedy under article three of this chapter." The Board created by virtue of chapter 158, article 25, together with its duties and responsibilities having been abolished by its own limitation on March 31, 1934, and hence being only a temporary measure, and chapter 126, article 21, having become a part of the permanent Agriculture and Markets Law, the court must look to article 3 of the permanent law to determine what, if any, penal punishment may therein be provided.

An examination of article 3, section 41, thereof provides that " a person who by himself or another violates any of the provisions of this chapter or of any other law * * * is guilty of a misdemeanor."

It follows, therefore, that the "Milk Control" Law as enacted in chapter 126, articles 21 and 21-A, now in effect, makes a violation thereof a misdemeanor.

Section 258-m of article 21-A gives the Commissioner the power to fix prices by official order. Certainly the intent of the Legislature was to give the Commissioner power to enforce any provision contained in article 21-A, especially created as an emergency measure, to the same extent as article 21. Obviously, the power to enforce article 21-A, especially enacted for an emergency, is just as important, if not more important, than the power to enforce the perma-

nent law, article 21, intended to be effective during all times, emergency or otherwise.

The defendants further contend that chapter 126, articles 21 and 21-A, of the Laws of 1934, is unconstitutional because section 258-n thereof grants certain exemptions to co-operative milkdealer corporations on prices fixed by order of the Commissioner which are not afforded to the so-called independent milk dealer. Furthermore that by virtue of subdivision 13 of official order No. 74 of the Commissioner the Department permits milk dealers to sell grade B bottled milk at eight cents per quart bottle, said milk being sold direct by the dealers to consumers at about 180 milk stations throughout the city of New York, and that, in view of the price of nine and three-quarters cents fixed by the Commissioner, the defendant Eisenberg Farms, Inc., and other dealers similarly situated, are unable to compete with these prices.

In determining this point, the court must look to section 258-k of article 21-A, which reads as follows: " The legislature having declared by chapter one hundred fifty-eight of the laws of nineteen hundred thirty-three that certain conditions exist relative to the production, sale and distribution of milk and milk products in this state, endangering the public health and public welfare and amounting to a public emergency in the milk industry of the state, it is hereby declared that such emergency still exists and may reasonably be expected to continue until April first, nineteen hundred thirty-five."

The Legislature having declared the existence of a public emergency in the milk industry " endangering the public health and public welfare," it was entirely proper for the Commissioner to grant a price exemption on milk sold by wholesalers at the milk stations established throughout the city of New York. These milk stations are operating through the department of public welfare and are intended for the poor and needy. It may be, as claimed by the defendants, that instances have occurred where persons, who cannot be classified as among the poor and needy, have purchased milk at these stations at the low price, but all that this may prove is that the law is not being properly enforced and not that the law is unconstitutional. Such instances prove only the exception. As a general proposition persons financially able to purchase milk at nine and three-fourths cents per quart bottle will not apply at a milk relief station to get the benefit of the lower price. The defendant Eisenberg Farms, Inc., like other milk dealers, may avail itself of the right to sell its milk through these welfare stations. Eisenberg Farms, Inc., cannot find fault if it refuses to avail itself of this privilege.

The idea of price fixing as part of the police power is nothing new in the law of this State. In *People* v. *Weller* (237 N. Y. 316), decided February 19, 1924, the question came up as to whether the Legislature had the power to regulate and fix prices on the resale of theatre tickets. The court stated (p. 324): " The declaration of the Legislature that the price or charge for admission is a matter affected with the public interest is not conclusive upon the courts; for the courts must in each case decide whether in fact the public interest justifies an attempted restriction by the State upon the liberty of its citizens. Not the assertion of the Legislature but only the actual existence of conditions which would justify the exercise of legislative control, must be the basis of a valid exercise of the police power. Yet the indication by the Legislature of its own purposes may certainly, in some degree, guide the courts in their consideration of the validity of the legislative assertion of power."

Again (on pp. 331 and 332) the court states: " The proposed remedy encroaches upon the liberty of the individual only to the extent that the Legislature might properly regard as reasonably calculated to remedy the abuse, and the people have placed upon the Legislature the responsibility of determining whether the remedy is wise and will promote the public welfare. The courts are called upon to determine only whether the Legislature has acted within its powers in enacting this legislation; the judges have no disposition, and the courts have no right, to pass upon the wisdom of its exercise."

On the matter of classifications and exceptions it is to be noted that in *Atkins* v. *Hertz Drivurself Stations, Inc.* (261 N. Y. 352, at p. 359), the court states: " Classifications and exceptions are generally matters for the Legislature and are only declared unconstitutional where it is quite apparent that they are arbitrary and without reason for existence."

In *People* v. *Nebbia* (262 N. Y. 259, 268), decided on July 11, 1933, the offense charged in the information " was a sale by Mr. Nebbia of two one-quart bottles of milk and a loaf of ' Italian bread ' for 18 cents." The court held: " We are accustomed to rate regulation in cases of public utilities and other analogous cases and to the extension of such regulative power into similar fields. Rents have been regulated to prevent the exactions of greedy landlords who would contend that their property was taken from them when they were deprived of the right to do what they would with their own. (*Block* v. *Hirsh*, 256 U. S. 135, *supra; Brown Holding Co.* v. *Feldman*, 256 U. S. 170.) Compensation has been provided for workmen injured by the necessary risks of their employment although the common law cast the burden of such risks on the workman. (*Arizona Employers' Liability Cases*, 250

U. S. 400.) Preference to citizens in employment of laborers on public works has been upheld. (*Heim* v. *McCall*, 239 U. S. 175.) Prevailing rate of wages laws for workmen on municipal contracts have been upheld. (*Atkin* v. *Kansas*, 191 U. S. 207; *Austin* v. *City of New York*, 258 N. Y. 113.) Usury laws are of an ancient house. Tariffs for the protection of home industries are upheld. Sugar bounties have not been declared unconstitutional. (*United States* v. *Realty Co.*, 163 U. S. 427.) The rates of grain elevators (*Munn* v. *Illinois*, 94 U. S. 113) and cotton gins may be regulated. (*Frost* v. *Corporation Commission of Oklahoma*, 278 U. S. 515.) Rate fixing in the business of insurance has been upheld. (*German Alliance Ins. Co.* v. *Kansas*, 233 U. S. 389; *O'Gorman & Young, Inc.*, v. *Hartford Fire Ins. Co.*, 282 U. S. 251.) The regulation of wages of railroad employees has been sustained. (*Wilson* v. *New*, 243 U. S. 332.) The business of dealing in milk has been regulated so as to protect producers who must sell their produce on credit. (*People* v. *Perretta* [253 N. Y. 305], *supra*.) Commission merchants have been required to give bonds for honest accounting to prevent evils incident to the business of dealing in farm products. (*Payne* v. *Kansas*, 248 U. S. 112.) "

And again (on pp. 270 and 271): " Doubtless the statute before us would be condemned by an earlier generation as a temerarious interference with the rights of property and contract (*Matter of Jacobs*, 98 N. Y. 98; *Lochner* v. *New York*, 198 U. S. 45); with the natural law of supply and demand. But we must not fail to consider that the police power is the least limitable of the powers of government and that it extends to all the great public needs; that constitutional law is a progressive science; that statutes aiming to establish a standard of social justice, to conform the law to the accepted standards of the community, to stimulate the production of a vital food product by fixing living standards of prices for the producer, are to be interpreted with that degree of liberality which is essential to the attainment of the end in view (*Austin* v. *City of New York*, *supra*, page 117 [258 N. Y.]; and that mere novelty is no objection to legislation (*People ex rel. Durham Realty Corp.* v. *La Fetra*, 230 N. Y. 429).

" The State courts should uphold State regulation whenever possible. They should be clearly convinced that a statute is unconstitutional before they declare it invalid. (Cf. *Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271, with *Arizona Employers' Liability Cases*, *supra*; also cf. *People ex rel. Rodgers* v. *Coler*, 166 N. Y. 1, with *Atkin* v. *Kansas*, *supra*.) "

Furthermore, the constitutionality of the proposition was passed upon recently in the Appellate Division, Third Department,

*Matter of Eisenberg Farms, Inc.*, v. *Baldwin* (242 App. Div. 748), and the constitutionality of said law was upheld.

On the issue as to whether the People have made out a case against each of said defendants, the People have proven through its witness, Inspector McDonough, that defendant Bratowsky was in the employ of the defendant Eisenberg Farms, Inc., and made the sale of milk and cream herein as its agent; that the prices paid for said milk and cream were less than the prices fixed by the Commissioner and his order No. 74; that the calculations as to prices were made on the back of sales slips and that the driver, Bratowsky, participated in said calculations; that upon the price being fixed, as enumerated on the back of the sales slips, said slips were marked " paid " by the driver.

The actions of the driver must be charged to its employer. (See Agriculture and Markets Law, §§ 42, 43.)

The defendants dispute the testimony of Inspector McDonough, thus creating an issue of fact which should be determined by the Court of Special Sessions.

" Where the defendant is charged with the commission of a specific crime, as distinguished from an offense which the magistrate has summary jurisdiction to determine in his capacity as a trial justice, obligation is imposed upon the magistrate by the provisions of the Code of Criminal Procedure to conduct an examination, and, if it appears from the examination that a crime has been committed and that there is sufficient cause to believe the defendant guilty thereof, to commit him for trial at the Court of Special Sessions or for indictment by the grand jury, as the case may be. (Code Crim. Proc. §§ 149, 150, 190, 208, 209, 211, 213; *Tanzer* v. *Breen*, 139 App. Div. 10.) " (*People* v. *Gussfeld*, 87 Misc. 274, 277.)

A complaint is, therefore, ordered against the defendant Abraham Bratowsky, and both defendants are held for the Court of Special Sessions. Defendant A. Bratowsky is paroled.