### OPINION OF THE JUSTICES TO THE SENATE.

The General Court, if it finds that prices and other conditions attending the sale of tickets of admission to theatres or other public places of amusement requiring a license under G. L. c. 140, § 181, are matters affected with a public interest, and that legislation is necessary for the purpose of safeguarding the public against fraud, extortion, exorbitant rates and like abuses in relation thereto, constitutionally may enact legislation (1) requiring that the price at which such tickets may be sold shall be printed on the face thereof; (2) requiring that the business of reselling such tickets, commonly known as " ticket scalping," may be subjected to reasonable regulation under the police power; (3) requiring that such business shall be licensed; (4) requiring that the price at which tickets are resold by persons engaging in such business shall be stamped upon the ticket; and (5) imposing a limit, reasonably calculated to prevent extortion, but affording a reasonable profit, on the resale price of such tickets by persons engaging in such business.

In such circumstances it would not be constitutional for the General Court to enact legislation requiring that no such ticket should be sold or resold at a price in excess of that printed on the face thereof.

The Justices of the Supreme Judicial Court, after having given their opinions under § 3, art. 2, of the Constitution, upon certain questions relating to the constitutional power of the General Court to enact legislation regarding the price, sale and resale of tickets of admission to theatres or other public places of amusement, respectfully asked to be excused from answering a question as to whether or not a certain bill, containing many sections and subsections of proposed legislation on those subjects, would, " if enacted, be constitutional."

THE following order was passed by the Senate on March 28, 1924, and was transmitted to the Justices of the Supreme Judicial Court on April 1, 1924.

WHEREAS, There is pending in the Senate a bill entitled " An Act to regulate the sale and resale of tickets to theatres and other places of public amusement or entertainment," printed as House, No. 1038, a copy of which is herewith submitted; and

WHEREAS, Doubt exists as to the constitutionality of said bill, if enacted into law; accordingly be it

ORDERED, That the Senate require the opinions of the Honorable the Justices of the Supreme Judicial Court on the following important questions of law: —

1. May the General Court, if it finds that prices and other conditions attending the sale of tickets of admission to theatres or other public places of amusement, requiring a license under G. L. c. 140, § 181, are matters affected with a public interest, and that legislation is necessary for the purpose of safeguarding the public against fraud, extortion, exorbitant rates and like abuses in relation thereto, constitutionally enact legislation: —

A. Requiring that the price at which such tickets may be sold shall be printed on the face thereof?

B. Requiring that no ticket shall be sold or resold at a price in excess of that printed on the face thereof?

C. Requiring that the business of reselling such tickets, commonly known as " ticket scalping," may be subjected to reasonable regulation under the police power?

D. Requiring that such business shall be licensed?

E. Requiring that the price at which tickets are resold by persons engaging in such business shall be stamped upon the ticket?

F. Imposing a limit, reasonably calculated to prevent extortion, but affording a reasonable profit, on the resale price of such tickets by persons engaging in such business?

2. Would said bill, if enacted, be constitutional?

The proposed legislation, printed as House, No. 1038, referred to in the foregoing order, contained the following provisions:

SECTION 1. Chapter one hundred and forty of the General Laws is hereby amended by inserting after section one hundred and eighty-one the following new section: —

Section 181A. Every ticket of admission or other evidence of right of entry to any theatrical exhibition, public show or public amusement or exhibition of any description for admission to which a price is charged shall bear on its face the price charged for such ticket or other evidence of right of entry by the person issuing the same. Whoever issues or causes to be issued such a ticket or other evidence of right of entry in violation of this section shall be punished by a fine of not more than five hundred dollars.

SECTION 2. Said chapter one hundred and forty is hereby further amended by inserting after section one hundred and eighty-five the following seven new sections:—

Section 185A. No person shall resell or engage in the business of reselling any ticket or tickets of admission or other evidence of right of entry to any theatrical exhibition, public show or public amusement or exhibition of any description without being licensed therefor by the commissioner of public safety, in this and the six following sections called the commissioner. A license shall be granted only upon a written application setting forth such information as the commissioner may require, accompanied by proof satisfactory to the commissioner as to the moral character of the applicant. Each license issued under this section shall be in force until the first day of January next after its date, unless sooner revoked. No such license may be transferred or assigned except upon written permission of the commissioner.

Section 185B. The fee for each license granted under section one hundred and eighty-five A and for each annual renewal thereof shall be one hundred dollars.

Section 185C. No license shall be issued under section one hundred and eighty-five A until the licensee gives to the state treasurer a bond in the penal sum of one thousand dollars, executed by the licensee and by a surety company approved by the commissioner, conditioned that the obligor shall faithfully comply with all the terms of his license and with the rules and regulations of the commissioner made under section one hundred and eighty-five F.

Section 185D. The commissioner, after notice to the licensee and reasonable opportunity for him to be heard, may declare his license forfeited, or may suspend his license for such period as the commissioner may deem proper, upon satisfactory proof that the licensee has violated or permitted a violation of any condition of his license. The pendency of proceedings before a court shall not suspend or interfere with the power to declare a forfeiture. If the license is declared forfeited, the licensee shall be disqualified to receive a license for one year after the expiration of the term of the license so forfeited.

Section 185E. No licensee under section one hundred and eighty-five A shall resell any ticket or other evidence of right of entry to any theatrical exhibition, public show or public amusement or exhibition of any description at a price in excess of fifty cents in advance of the price printed on the face of such ticket or other evidence of right of entry as the purchase price thereof.

Section 185F. The commissioner shall establish and may from time to time alter rules and regulations respecting the granting of licenses and the business carried on by persons licensed under section one hundred and eighty-five A. He shall, either personally or by such assistants as he may designate, as often as he deems it necessary, investigate the affairs of such licensees and for that purpose shall have free access to the vaults, books and papers of such licensees and shall ascertain the condition of the business and whether it has been transacted in compliance with the law and the regulations made hereunder. The commissioner may cause an examination of said books and business to be made by an accountant whom he may select, and the cost of any such examination shall be paid by the person whose books are so examined. The commissioner shall keep a book or books in which shall be entered in alphabetical order a record of all licenses granted under section one hundred and eighty-five A, which record shall be open to public inspection.

Section 185G. Whoever violates any provision of sections one hundred and eighty-five A to section one hundred and eighty-five F, inclusive, or any rule or regulation of the commissioner made under section one hundred and eighty-five F, shall be punished by a fine of not more than five hundred dollars.

On April 23, 1924, the Justices returned the following answers:

To the Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions in the order of March 28, 1924, copy whereof is hereto annexed.

The questions are considered on the footing that the General Court as set forth in the order will find or has already found that the subject with which the statute deals is affected with a public interest and that the proposed statute is necessary for the protection of the public against fraud, extortion and similar abuses in the sale of tickets of admission to theatres and other places of public amusement. Such determination is not conclusive that the proposed regulation is justified. The nature and extent of the public interest and of the exertion of the police power touching it are always a subject for judicial inquiry. *Opinion of the Justices,* 207 Mass. 601, 604. *Charles Wolff Packing Co.* v. *Industrial Court,* 262 U. S. 522, 536.

Broadly stated, the questions relate to regulation of the sale of tickets to theatres and other places of public amusement. Some aspects of the proposed statute deal with the fixing of the price with reference to original cost to be charged for the resale by brokers of tickets of admission to such resorts. We accept as the controlling principle a recent pronouncement by the Supreme Court of the United States: " There is, of course, no such thing as absolute freedom of contract. It is subject to a great variety of restraints. But freedom of contract is, nevertheless, the general rule and restraint the exception; and the exercise of legislative authority to abridge it can be justified only by the existence of exceptional circumstances." *Adkins* v. *Children's Hospital,* 261 U. S. 525, 546.

The right to set up and maintain theatres and other places of public amusement is not natural and inherent. Working by an artisan at his trade, carrying on an ordinary business, or engaging in a common occupation or calling cannot be subjected to a license fee or excise. These plainly are not affected with a public interest. *Gleason* v. *McKay,* 134 Mass. 419, 425. *O'Keeffe* v. *Somerville,* 190 Mass. 110, 112, 113. *Charles Wolff Packing Co.* v. *Industrial Court,* 262 U. S. 522. Theatres and places of public amusement as to maintenance and operation are different in nature. Without undertaking to trace the history of the stage in this Commonwealth, it may be regarded as common knowledge that

it was not favored by the temper of the times in colonial and early provincial Massachusetts. · Probably as soon as there appeared a disposition to set up and patronize playhouses, they were strictly forbidden. By Prov. Laws 1749–50, c. 24, stage plays and other theatrical entertainments were forbidden. That act by its terms was to continue in force for five years. It was extended by Prov. Laws 1769–70, c. 12; 1770–71, c. 5; 1775–76, c. 14; 1779–80, c. 18, at least until November 1, 1785. Reports of discussions of that period show that the inhibitory act was thought to have continued in force until 1797 and that prosecutions occurred after 1790. In any event, it was operative for a considerable time after the adoption of the Constitution. Apparently, after the expiration of the last prohibitory statute, there was no further legislation until St. 1805, c. 98. All theatrical entertainments without a license by public authorities were prohibited by that statute. The subject has since been continuously regulated. It has been the practice of the Commonwealth for more than a century to treat the maintenance of such places as a special and peculiar business upon which an excise, as distinguished from a general tax, might rightly be levied. It was held in 1830 that the constitutionality of such a statute was not open to doubt. *Boston* v. *Schaffer*, 9 Pick. 415. To the same effect are recent decisions. *Commonwealth* v. *McGann*, 213 Mass. 213. *Mutual Film Corp.* v. *Ohio Industrial Commission*, 236 U. S. 230.

Numerous reasons lead to the conclusion that the maintenance of theatres and other places of amusement is for the use of the public and affected with a public interest. The character of the performances presented has an intimate connection with the preservation and promotion of public morality. Some theatrical presentations are injurious and some are beneficial to public morals. Although their entertaining and recreative features are commonly more emphasized than any other, they also have or are susceptible of distinctly educative functions. Some are highly instructive and enlightening. Some inspire emotions of patriotism, philanthropy and good will. They have a tendency to

gather at one time large numbers of people under a single roof and under comparatively crowded conditions. These factors have intimate relation to the health, safety and good order of the community. In these particulars such places require constant supervision and inspection in the interest of the public at large in order to prevent disaster by fire and accident, spread of disease and general and individual disorder and crime. The construction and maintenance of buildings devoted to such uses demand approval and oversight by public officers acting for the general welfare. There can be no doubt as to the validity of a statute denouncing under penalty discrimination on account of race or color in admission to theatres and other places of amusement. G. L. c. 272, § 98. *Bryant* v. *Rich's Grill*, 216 Mass. 344. Other regulations as to the admission of persons to places of amusement have been upheld. *Western Turf Association* v. *Greenberg*, 204 U. S. 359.

In the light of their history in this Commonwealth, but without resting wholly upon that ground, we are of opinion that theatres and other places of public amusement are affected with a public interest and devoted to a public use. There are decisions in other jurisdictions to this effect. *People* v. *King*, 110 N. Y. 418, 428. *Donnell* v. *State*, 48 Miss. 661, 680, 681. *Aaron* v. *Ward*, 203 N. Y. 351, 356. See *Civil Rights Cases*, 109 U. S. 3, 41, 42.

Such kinds of business fall either in the class which can be carried on only by authority of a public grant with the correlative duty of rendering public service, or in that exceptional class recognized for historical reasons as impressed with a public interest, like money lenders, " keepers of inns, cabs and grist mills." *Charles Wolff Packing Co.* v. *Industrial Court*, 262 U. S. 522, 535. *Commissioner of Banks* v. *Prudential Trust Co.* 242 Mass. 78, 88. See *German Alliance Ins. Co.* v. *Kansas*, 233 U. S. 389, 425, 426.

The circumstance that a business is affected with a public interest does not make legally possible every legislative regulation. All such regulations must be reasonable in their nature, directed to the prevention of real evils and adapted to the accomplishment of their avowed purpose.

Under the guise of protecting the general welfare there cannot be arbitrary interference with business or irrational or unnecessary restriction. When it becomes established that a business is subject to legislative regulation because affected with a public interest and devoted to a public use, incidental and accessory features reasonable in scope and fair in aim fall under the same rule. *State* v. *Corbett*, 57 Minn. 345, 349.

A statute requiring the one issuing a ticket of admission to a theatre or other place of public amusement to print the price on its face violates no constitutional right. *People* v. *Thompson*, 283 Ill. 87.

One professed purpose of the proposed statute in the light of the facts assumed in the order is the suppression of " fraud, extortion, exorbitant rates and like abuses." It may be presumed that facts found in actual trials in courts in other States are found to exist in kind in this Commonwealth. See, for example, *People* v. *Weller*, 237 N. Y. 316, 326–329. An attempt to safeguard the public against fraud and extortion in connection with sales of tickets to theatres and places of amusement cannot be pronounced vain. Strangers or sojourners may be thought peculiarly liable to abusive practices in this particular. Moreover, it may be that there has been found to be collusion between the management and those engaged in resale.

A ticket of admission to a place of amusement is a revokable license. *Burton* v. *Scherpf*, 1 Allen, 133. Commonly a license is a personal privilege and not transferable. *Burgess* v. *Mayor & Aldermen of Brockton*, 235 Mass. 95, 100. *De Haro* v. *United States*, 5 Wall. 599, 627. While it may be assumed that the resale of a theatre ticket transfers all the right of the original purchaser, the transaction relates to property of such tenuous nature as to render it peculiarly liable to abuses. Business of that kind rightly may be required to be licensed. See *La Tourette* v. *McMaster*, 248 U. S. 465.

The fair import of the order is that the business of reselling such tickets has assumed proportions which have become in the opinion of the General Court a menace to the public welfare.

Manifestly no statute by attempting to outlaw a natural right can deprive one of the opportunity to earn his livelihood. The rights to labor and to do ordinary business are natural, essential and inalienable, partaking of the nature both of personal liberty and of private property. *Bogni* v. *Perotti*, 224 Mass. 152, 155. *Adams* v. *Tanner*, 244 U. S. 590. It was held in *People* v. *Steele*, 231 Ill. 340, and *Ex parte Quarg*, 149 Cal. 79, that a prohibition of the resale of such tickets at an advance over the price printed on the face of the tickets was unconstitutional because it made criminal the doing of a reasonable kind of business.

Instances of the establishment of prices by public authority in connection with any business except that of common carriers and those requiring use of the public ways, although affected with a public interest, are not common. Usury laws which fix the price for the use of money have been upheld when directly assailed. *Griffith* v. *Connecticut*, 218 U. S. 563. *Missouri, Kansas & Texas Trust Co.* v. *Krumseig*, 172 U. S. 351. *Holcombe* v. *Creamer*, 231 Mass. 99, 105. If these laws are to be upheld only in the light of the common law history of interest for the use of money, *Munn* v. *Illinois*, 94 U. S. 113, 153, 154, *German Alliance Ins. Co.* v. *Kansas*, 233 U. S. 389, 432, 433, we are of opinion that in view of the history of the theatre in this Commonwealth it stands on the same footing. There are examples of more or less definite fixing of prices in connection with licensing to be found in our statutes. For example, return under certain conditions of a percentage of the fee collected by managers of intelligence offices, G. L. c. 140, §§ 43, 44, interest to be charged by pawnbrokers, G. L. c. 140, § 72, interest to be charged on loans of less than $1,000, G. L. c. 140, § 90, interest to be charged on loans of $300 or less, G. L. c. 140, §§ 96 and 100. The constitutionality of such statutes when attacked has been sustained. It was held in *Dewey* v. *Richardson*, 206 Mass. 430, that St. 1908, c. 605, § 1, limiting the rate of interest legally to be charged on unsecured loans for less than $200 was constitutional. Similar laws as to pawnbrokers have been upheld. *Commonwealth* v. *Danziger*, 176 Mass. 290. Regulation of rates for hackney carriages are permis-

sible. *Commonwealth* v. *Page*, 155 Mass. 227. *Terminal Taxicab Co. Inc.* v. *District of Columbia*, 241 U. S. 252. Rates of common carriers and other so called public service corporations are subject to public regulation. *Donham* v. *Public Service Commissioners*, 232 Mass. 309. Under the workmen's compensation act fees of attorneys are regulated, *Gritta's Case*, 241 Mass. 525, and also of physicians, *Panasuk's Case*, 217 Mass. 589, *Huxen's Case*, 226 Mass. 292.

In view of the prices commonly charged for tickets of admission to theatres and places of amusement, we are of opinion that a limitation of additional price on resale to a sum not exceeding fifty cents on each ticket cannot be pronounced unreasonable.

A statute similar in its substantial features to the one here proposed has recently been held to be constitutional in *People* v. *Weller*, 237 N. Y. 316.

In advising as to the constitutionality of the proposed statute, we do not rely in this connection upon cases like *Munn* v. *Illinois*, 94 U. S. 113, and *German Alliance Ins. Co.* v. *Kansas*, 233 U. S. 389, which rest upon more extreme ground, and we confine ourselves strictly to the questions here propounded.

In the light of the principles which we have stated, we answer as to question (1), Yes, to its subdivisions (A), (C), (D), (E), (F), and No to its subdivision (B).

Although we do not observe any unconstitutional provision in the proposed bill, we respectfully ask to be excused from answering question (2) touching its constitutionality in all its provisions. The reasons for this are stated in *Opinion of the Justices*, 239 Mass. 606, 612.

> ARTHUR P. RUGG.
> HENRY K. BRALEY.
> CHARLES A. DECOURCY.
> JOHN C. CROSBY.
> EDWARD P. PIERCE.
> JAMES B. CARROLL.
> WILLIAM C. WAIT.