### SCOVILLE v. TOWN OF MIAMI SPRINGS, et al.

Circuit Court, Dade County.

February 19, 1954.

Ralph F. Miles, Hialeah, for plaintiff.

Anderson & Nadeau, Miami, for defendants.

CHARLES A. CARROLL, Circuit Judge.

This cause came on for trial and final hearing before the court. On the pleadings, evidence and argument it is ordered, adjudged and decreed as follows—this court has jurisdiction of the subject matter and the parties; the equities of the cause are with the plaintiff; the defendant town of Miami Springs and the defendant officers thereof and their agents, servants and attorneys are hereby enjoined and restrained from enforcing its ordinance #179 against the plaintiff with respect to provisions thereof restricting the size of product price signs to 12 by 12 inches and the posting of the signs to dispensing equipment.

Plaintiff is lessee-operator of a gasoline service station in Miami Springs on the northeast corner of northwest 36th street and LeJeune road on the main approach to and near the International Airport—one of the busy traffic areas of greater Miami. Northwest 36th street divides the town on the north from the airport properties on the south of that street. The north side of 36th street is commercial and highly developed. The town (largely residential except for the south border on 36th street) extends north of that location. Plaintiff is in a very competitive business in an area of fast competition.

The title of the ordinance, which was adopted June 22, 1953, follows—

AN ORDINANCE REGULATING THE PLACING OR MAIN-
TENANCE OF ADVERTISING SIGNS OR DEVICES IN OR
ABOUT THE PREMISES OF ANY BUSINESS ENGAGED IN
THE SELLING OF PETROLEUM PRODUCTS AND PROHIBIT-
ING MISLEADING OR DECEIVING ADVERTISEMENTS IN
THE SALE OF SAID PRODUCTS.

It will be noted that the title does *not* say the regulation of size and location of price signs is for *the purpose of* preventing misleading or deceiving advertising, but summarizes the contents by enumerating the regulations as to the size and place of signs, *plus containing* provisions for prohibiting misleading or deceiving advertisements in the sale of petroleum products.

The body of the ordinance bears that out. There is no recitation of facts or finding to the effect that use of larger signs, placed elsewhere than on pumps, would mislead or defraud. Section 1 has three subsections—(a) limiting price signs to 12 by 12 inches, (b) restricting location thereof to dispensing equipment, and (c) a third part (which obviously is the portion referred to in the part of the title pertaining to prevention of misleading or deceiving advertisements) which provides that all price signs shall indicate the selling price in numbers that are uniform in size and clear and legible, and show the amount of tax separately. Section 2 includes two subsections restricting size (to 12 by 12 inches) and the location of price signs for servicing, washing and polishing, etc.

The ordinance also includes a provision for penalty for violation, and it is apparent that each day of violation would be a separate offense. Active threat of multiple arrests and prosecutions confers jurisdiction in equity.

This is not a novel controversy. Cases similar in material features have been passed upon by courts of a number of states—even similar with respect to restrictions on the size of price signs for gasoline stations to the exact figures of 12 by 12 inches and in some cases as to location on the pumps.

First, however, it is necessary to consider the only authority cited by counsel for the town, Merritt v. Peters (Fla. June 2, 1953), 65 So. 2d 861. In an area zoned for limited business, including motels, the county commissioners, as a zoning regulation under an enabling zoning statute, promulgated a regulation that motel signs *should not exceed* 40 square feet. That would allow a sign over 6 feet high and 6 feet wide, or 8 by 5 feet. Complainant had erected such a sign more than four times the size of the 40 square feet allowed. Stating there was no factor of health, safety or morals involved and no question of fraud or deceit, the court said with respect to the contention that the regulation was arbitrary and

unreasonable at page 862—"but we disagree . . . that the restriction cannot be sustained on aesthetic grounds alone." The facts in the cited case were thus materially different—the regulation prohibited name or advertising signs of excessive size, *for aesthetic reasons only,* in an area of somewhat limited zoning. There was no question as to whether the authorized name signs were inadequate or ineffective. No question of limitation of location on the property was involved. There was no contention the regulation caused loss of revenue, nor was there any showing or contention the plaintiff was so situated that the regulation as to him was designed to and had the effect of aiding his competitors to his loss.

Plaintiff has a Sunoco service station. His product is different and unique in that he sells only one grade of gasoline, which is high test gas, at one price, being the equal of the price of regular gas sold by his competitors. The other companies, almost without exception, sell two grades of gas, regular and high test, pricing the high test at several cents per gallon above the price for regular. Plaintiff established that after the town began to enforce the ordinance against him, and he changed from using the *larger* sign, on the *corner or edge* of his property, and relied only on 12 by 12 inch signs on his pumps, his ability properly to advertise his lower high test gas price was seriously affected, and he suffered a substantial drop in his business earnings. Plaintiff thus complains not only of technical injuries resulting from unconstitutional restrictions on the free business use of his property—he shows real and substantial loss and injury.

The portions of the ordinance which plaintiff challenges are not shown to bear any reasonable relation to the public health, safety or morals. Certainly restricting gas price signs to one foot square and retiring them to an inner part of the property was not done for aesthetic purposes—when one considers and observes the large advertising signs which flourish in all business areas, including gas service stations. There is attached at this point and made a part of this decree a photograph which was filed in evidence. This picture shows plaintiff's service station, the size of the signs (3 by almost 5 feet) showing the price of gas and their locations at the corner of the property which the ordinance would prohibit, the ineffectiveness of the smaller signs on the pumps and the unrestricted large advertising signs above the station and on buildings occupied by adjoining businesses.

There is no sufficient basis in fact or law justifying the restrictions as an exercise of police power. Most authorities in other jurisdictions so indicate, Massachusetts cases and some decisions in New York are to the contrary, but the weight of authority holds

such restrictions unconstitutional. In Slome v. Godley (Mass. 1939), 23 N. E. 2d 133, the court presumed that fraud on the public would be avoided. Courts in other jurisdictions generally refuse to follow the Slome case, finding no basis for an assumption of fraud—reasoning, on the contrary, that a larger sign, stating the price for the product, tends to prevent fraud. The Massachusetts court was also influenced by the fact that the restrictions as to size and location of gas price signs was by an act of the legislature from which it found or assumed supporting legislative policy which it felt it should uphold. In another case following the Slome case, Merit Oil Co. v. Directors, etc. (Mass.), 65 N. E. 2d 529 at 532, the same court referred to a situation where the same dealer sold one grade of gas, a feature which was not present in the case (but is present in the case at bar)—and the intimation was clear that the court would hold otherwise on the facts as they are in this case.

About the same time the Slome case was decided similar restrictions were held unconstitutional in New Jersey and Connecticut in Regal Oil Co. v. State (N.J.), 10 A. 2d 495, and State v. Miller (Conn.), 12 A. 2d 192. The New Jersey case is almost exactly in point on the principal facts which appear in this case—a state law required price signs to be placed on the pump, prohibited display of such signs on any other portion of the property, and the signs could be no larger than 8 by 10 inches. A service station operator posted a larger price sign elsewhere on his property facing the highway, in violation of the statute and regulations, his arrest and prosecution was the basis for the court's consideration of the question. The operator was an independent retail dealer and just as in the present case he was able to undersell the large company retail outlets which were his competitors *because he sold only one grade of motor fuel at a lower price than comparable grades sold by his competitors.* The court recognized his right and necessity to advertise the price of his product, saying at page 498—

> Prosecutor's [defendant below] proof is that the regulation sign on the pump or other dispensing equipment is "entirely insufficient" for that purpose; that it "completely destroys" the independent gasoline dealer's opportunity "to present his gasoline and his price (therefor) to the public" and that provisions of the challenged legislation "are essentially punitive and aimed solely at independent gasoline distributors and retailers." Prosecutor's proofs further are that the use of such signs as exemplified by exhibits P-2 and P-3 are "indispensable" to it in the conduct of its business; and that the "one thing" it must have "to stay in business" is the right to display adequately sized price signs to attract the approaching and passing motorists.
>
> Respondent's [the state] justification of the act was, broadly speaking, that it prevents ruinous price wars between dealers which it is

claimed unstabilized the industry and that it further prevented fraud and misrepresentation in one form or another.

It is interesting to observe in passing, for whatever value, if any, it may have, that respondent's proofs in support of its claims come from representatives of associations whose membership consists of those who in the vast majority sell the motor fuel of the major oil companies. But be that as it may, the proofs disclose that there was no price war between the spring of 1938 and 1939. But assuming that there had been tense competition between dealers in the industry, we fail to see its relevancy. In the absence of a valid agreement to the contrary, or the violation of any valid public law, we know of nothing which makes or should make dealers in the sale of motor fuels any more immune from tense competition than other merchantmen.

Nor do we discern any merit in the claim that subdivision (c), section 201 of the act of 1939 can be supported upon the ground that it was enacted to prevent fraud and misrepresentation in the industry. A regulation sign posted on the pump or other equipment cannot be seen until one gets within a very few feet of it. The signs used by prosecutor (Ex. P-2 and P-3) can be seen for a considerably greater distance. If the regulation sign serves to prevent fraud and misrepresentation then surely prosecutor's larger signs should even more effectively tend to accomplish the same result. The court in the case of State of Connecticut v. Miller, (decided in Court of Common Pleas New Haven County on October 27, 1939) held that the prohibitory part of the act (use of signs other than those provided by statute) "was unreasonable, arbitrary and in its effect discriminatory." In reaching that result the court, among other things, said:

"If a retailer, as a competitive device, can and cares to undersell his rivals he is in effect forbidden to effectively advertise that fact 'upon, at or within the vicinity of his premises' since he may not notify the public what his price is in letters and figures which 'he who runs may read.' He is limited to signs which only he who stops may read."

For a contrary view see Mestichelli v. Valentine, (New York Supreme Court—no opinion for publication) and Slome v. Godley, Chief of Police of the City of Fitchburg, Mass., 23 N. E. 2d 133, decided by the Supreme Judicial Court of Massachusetts on October 28, 1939, in which allegedly comparable legislation was sustained as a valid exercise of the police power of the state.

We have epitomized the provisions of the challenged act to indicate that they—as well as the provisions of the act of 1938—constitute a comprehensive code for fair and honest dealing. Both acts make plenary provisions to reach wrongdoers. But there is no charge here that prosecutor by the use of the non-conforming signs, practiced fraud or dishonesty; or that the use of the signs misled or deceived the buying public as to either the brand or the price of the motor fuel which it sold. Indeed, there could have been no such proof. For, as we have seen, prosecutor sold but one brand of motor fuel at but one price.

We are firmly of the opinion that the limitations imposed by the regulative signs are arbitrary and oppressive. They unreasonably interfere with, curtail and deny to prosecutor, a method which is employed day in and day out by merchantmen to attract the buying power of the public. The regulation signs can accomplish but one thing and that is to deny prosecutor its guaranteed right to engage in its lawful private business. Such a result is fatal.

In fine, we conclude that subdivision (c), section 201, Art. II, chap. 62, P. L. 1939, N.J.S.A. 39:12-2(c) does not, under the proofs of the case at bar, have any substantial relation to public health, public morals or some other phase of general welfare; it unlawfully interferes with and imposes unreasonable and unnecessary restrictions upon prosecutor's private business; it thus deprives prosecutor of its property without due process of law in violation of the 14th Amendment to our Federal Constitution; and is, therefore, unconstitutional.

Later cases showing a more recent consideration of the question indicate that the general view is against the validity of such regulations. While the New York decisions are not uniform, there is respectable authority there condemning such restrictions. Compare People v. Pearl (City of N.Y. App.), 17 N.Y.S. 2d 825; People v. Mestichelli (City of N.Y.), 18 N.Y. 2d 406; and People v. Arler Service Stations, Inc. (City of N.Y. App.), 21 N.Y.S. 2d 1006. In Levy v. City of Pontiac (Mich. 1951), 49 N.W. 2d 80, there is the same restriction limiting signs to one foot square and requiring them to be placed on pumps only. In striking the regulation the court said at page 82—

The right to advertise one's merchandise is, subject to the police power mentioned, within the right to liberty and property. The denial of such right is a taking of property without due process of law. Ritholz v. City of Detroit, 308 Mich. 258, 13 N.W. 2d 283.

Business practices, such as the one against which the ordinance in question is directed, have no detrimental effect on public health, peace, morals, safety and welfare. The size of signs which plaintiff may care to use, and their location at points other than the pumps, if such signs are not misleading or fraudulent, may not be regulated by the legislative body of defendant city.

With respect to the Massachusetts authorities cited by defendant, Slome v. Godley, 304 Mass. 187, 23 N.E. 2d 133, followed in Merit Oil Company v. Director of Division of Necessaries of Life, 319 Mass. 301, 65 N.E. 2d 529, we agree with the court's observation on the Slome case in State v. Miller, 126 Conn. 373, 12 A. 2d 192, 194, that: "This decision appears to assume, without any substantial basis, that the prohibition is to prevent fraud and then to apply the unquestioned doctrine that legislation to prevent fraud is within the police power."

See Sperry & Hutchinson Co. v. McBride, 307 Mass. 408, 30 N.E. 2d 269, 131 A.L.R. 1254, which cited People v. Victor, 287 Mich. 506, 283 N.W. 666, 124 A.L.R. 316.

We are in accord with the court's reasoning in Regal Oil Co. v. New Jersey, 123 N.J.L. 456, 10 A. 2d 495, 498 * * *.

In Serve Yourself Gasoline Stations Ass'n v. Brock (Dis. Ct. of App. Cal. 1952), 241 P. 2d 593, the court dealt with a statute differing from the one described in the last case but which on the same basis sought to control the nature and location of such signs on the property. Rejecting the regulation, the court said at page 597—

> The statute not only interferes arbitrarily with private business, but in addition it imposes unreasonable and unnecessary restrictions upon such business. New State Ice Co. v. Liebmann, 285 U.S. 262, 52 S. Ct. 371, 76 L. Ed. 747. Moreover, the statute violates our state constitution, Art. IV, sec. 25(33), in that it is a special law that is unnecessary because a general law is and can be made applicable. Such a law is Business and Professions Code, § 17500, which makes it unlawful for dealers, such as we have here, to advertise a fact which is untrue or misleading.  ·

> The statute before us differs from the statutes of several other states which have sought to restrict filling stations from advertising their product in that those statutes endeavored to bar all advertising of prices save upon the very small signs permitted on the pumps, whereas our statute permits such additional price signs but only if they spell out the saving. However, the principle applied in holding such statutes unconstitutional is equally applicable here. The cases all proceed on the theory that such additional signs have no detrimental effect upon, and bear no reasonable relation whatsoever to, public safety, health, morals or welfare. State v. Miller, 1940, 126 Conn. 373, 12 A. 2d 192; Regal Oil Co. v. State, 1939, 123 N.J.L. 456, 10 A.2d 495; Levy v. City of Pontiac, 331 Mich. 100, 49 N.W. 2d 80; cf. People v. Mestichelli, 1939, Cty.Mag.Ct., 18 N.Y.S.2d 406; Alabama Independent Serv. Station Ass'n v. McDowell, 242 Ala. 424, 6 So. 2d 502; State v. Hobson, Del. 1951, 83 A.2d 846. Views contrary to those reached by the Connecticut, New Jersey and Michigan courts are those of Massachusetts and New York. Slome v. Godley, 304 Mass. 187, 23 N.E. 2d 133; Merit Oil Co. v. Director of Division of Necessaries of Life, 319 Mass. 301, 65 N.E.2d 529, and People v. Arlen Service Station, 284 N.Y. 340, 31 N.E. 2d 184.

> As in our view the act is unconstitutional as applied to the signs here involved the judgment appealed from should be and it is reversed.

The foregoing do not include all authorities where this question has been considered, but they are enough to show that the definite weight of authority, and the modern thought on the question, holds that legislative restrictions of the kind here involved, particularly where they injure a party on a competitive basis, are unconstitutional restraints on the use and enjoyment of one's business and property, and a taking of property without due process of law, in violation of state and federal constitutional guarantees.